# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

SEAN SCOTT, an individual,

           Plaintiff,

v.

DOMUS CONSTRUCTION AND DESIGN, INC., d/b/a STATEWIDE, a California corporation, and Does 1-10, inclusive,

           Defendant.

Case No.:  3:21-cv-00623-BEN-AHG

**ORDER DENYING DEFENDANT'S MOTION TO DISMISS THE COMPLAINT AND/OR TRANSFER VENUE PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(B)(3) AND 28 U.S.C. § 1406**

**[ECF Nos. 5, 7, 8, 9]**

## I.   INTRODUCTION

Plaintiff SEAN SCOTT, an individual ("Plaintiff") brings this copyright infringement action against Defendant DOMUS CONSTRUCTION AND DESIGN, INC., d/b/a STATEWIDE, a California corporation ("Defendant").  ECF No. 1.  Before the Court is Defendant's Motion to Dismiss the Complaint and/or Transfer Venue Pursuant to Federal Rule of Civil Procedure 12(b)(3) and 28 U.S.C. § 1406 (the "Motion").  ECF No. 5.  The Motion was submitted on the papers without oral argument pursuant to Civil Local Rule 7.1(d)(1) and Rule 78(b) of the Federal Rules of Civil Procedure.  ECF No. 9.  After considering the papers submitted, supporting documentation, and applicable law, the Court **DENIES** Defendant's Motion.

/ / /

## II.    BACKGROUND

### A.    Statement of Facts[1]

Plaintiff alleges that on November 1, 2010, he first published his original inventory template, entitled "The Red Guide to Recovery—Personal Property Memory Jogger" (the "Memory Jogger").  ECF No. 1 at 2,[2] ¶ 1.  The Memory Jogger consists of a pre-populated spreadsheet created by Plaintiff, based upon his decades of experience in the construction and restoration industry, and serves to assist people whose homes have been damaged or destroyed by natural disasters.  *Id.*

On February 24, 2011, the copyright for the Memory Jogger was registered with the United States Copyright Office.  ECF No. 1 at 2, ¶ 1; *see also* ECF No. 1-3 at 1 (showing Copyright Registration No. TX7-371-629 for the original Memory Jogger).  On January 20, 2012, Plaintiff published the second version of the Memory Jogger, entitled "The Personal Property Memory Jogger & Home Inventory Tool."  *Id.*  On March 7, 2012, he registered the copyright for this second version of the Memory Jogger.  *Id.*; *see also* ECF No. 1-3 at 1 (showing Copyright Registration No. TX7-515-022 for the second version of the Memory Jogger).

Shortly after Plaintiff published the Memory Jogger, he created a website https://www.TheRedGuidetoRecovery.com, dedicated to the sale and marketing of his disaster recovery manual, "The Red Guide to Recovery – Resource Handbook for Disaster Survivors" (the "Red Guide"), and associated products.  ECF No. 1 at 2, ¶ 2; *see also* ECF No. 8 at 6:9-14.  Initially, Plaintiff offered the Memory Jogger for free on his website for about one year as a promotional tool to draw customers.  ECF No. 1 at 2, ¶ 2.  Afterwards, he only offered the Memory Jogger for free with the purchase of the Red Guide or for homeowners who lost their homes due to certain wildfires.  *Id.* at 2-3, ¶ 3.

---

[1]    The majority of the facts set forth are taken from the operative complaint, and for purposes of ruling on Defendants' motion to dismiss, the Court assumes the truth of the allegations pled and liberally construes all allegations in favor of the non-moving party. *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

[2]    Unless otherwise indicated, all page number references are to the ECF-generated page number contained in the header of each ECF-filed document.

After the initial promotional period, Plaintiff began selling the Memory Jogger for $99.95 on his website.  ECF No. 1 at 3, ¶ 3.  In approximately 2017, Plaintiff reduced the price to $49.95, as sales were lower than expected.  *Id.*  However, for the next two years, sales continued to remain low.  *Id.*  Around March 2020, in an attempt to determine why he was not selling the Memory Jogger, Plaintiff conducted a Google search using the Memory Jogger's title.  *Id.*  During this investigation, Plaintiff learned that Defendant, a general contractor also specializing in the restoration and repair of residential and commercial properties damaged due to fire, was giving away the Memory Jogger for free on its website, https://www.gostatewide.com, using the exact same title, "The Personal Property Memory Jogger & Home Inventory Tool," while claiming Plaintiff's work as its own.  *Id.*  (citing Exhibit "A" to Complaint); *see also* ECF No. 8 at 7:1-9.  Any visitor to Defendant's website who entered an e-mail address would receive the Memory Jogger.  ECF No. 1 at 3, ¶ 3.  Defendant also encouraged visitors to "share" the webpage offering the Memory Jogger with their friends, providing a link which would allow them to generate a post on their own Facebook pages.  *Id.*  As of March 4, 2020, the link to Defendant's webpage had been shared on Facebook on at least 265 occasions.  *Id.* at 3-4, ¶ 3.

Plaintiff's investigation also led him to Defendant's Facebook page, where he discovered that Defendant was holding seminars for wildfire victims and providing the Memory Jogger for "free" to promote their events and as an inducement to generate sales.  ECF No. 1 at 4, ¶ 4.  Once Facebook users attempted to register for one of Defendant's seminars through the website https://www.eventbrite.com, the event details directed them to Defendant's webpage to download the Memory Jogger for free.  *Id.* (citing Exhibit "B" to Complaint).  According to the available information, Defendant held at least three separate events on December 18, 2018, January 12, 2019, and February 23, 2019, for which it offered the Memory Jogger for free in order to promote the events.  *Id.*

The Complaint pleads that Defendant's infringing activity severely diminished the Memory Jogger's marketability and deprived Plaintiff of sales profits as well as his own use of the Memory Jogger as a promotional tool for the Red Guide and other products

offered on his website.  ECF No. 1 at 4-5, ¶ 5.  Meanwhile, Plaintiff alleges that Defendant gained profit from clients and construction projects obtained through its use and claim of ownership of Plaintiff's work as a "free" marketing tool on its own website and in connection with its seminars.  *Id.*

Plaintiff alleges that he is a California resident who is domiciled in San Diego County, California, while Defendant is a California corporation with a principal office in Sacramento, California.  ECF No. 1 at 5, ¶¶ 7-8; ECF No. 5 at 2:2-5.

### B.    Procedural History

On April 12, 2021, Plaintiff filed this lawsuit alleging two counts of copyright infringement.  ECF No. 1.

On April 26, 2021, Plaintiff served Defendant with the Complaint, ECF No. 4, meaning Defendant's responsive pleading was due by May 17, 2021.  FED. R. CIV. P. 12(a).

On July 13, 2021, Defendant filed the instant Motion.  ECF No. 5.  On August 2, 2021, Plaintiff opposed.  ECF No. 7.  On August 9, 2021, Defendant replied.  ECF No. 8.

## III.  LEGAL STANDARD

 "'[V]enue' refers to the geographic specification of the proper court … for the litigation of a civil action that is within the subject-matter jurisdiction of the district courts in general."  28 U.S.C. § 1390(a).  In copyright cases, venue is proper "in the district in which the defendant or his agent resides or may be found."  *See* 28 U.S.C. § 1400(a). However, as to the residency of corporate entities, they are deemed to reside "in ***any judicial district*** in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question."  28 U.S.C. § 1391(2) (emphasis added).  Further, in states with more than one judicial district, like California, the corporate defendant is "deemed to reside in ***any* district** in that State within which its contacts would be sufficient to subject it to personal jurisdiction if that district were a separate State, and, if there is no such district, the corporation shall be deemed to reside in the district within which it has the most significant contacts."  28 U.S.C. § 1391(d) (emphasis added).

A defendant may raise the defense of improper venue by moving to dismiss under

Federal Rule of Civil Procedure 12(b)(3) ("Rule 12(b)(3)").   A defendant may also challenge venue pursuant to 28 U.S.C. § 1406(a), which provides that "[t]he district court of a district in which … a case laying venue in the wrong division or district [is filed] shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."   Once a defendant challenges venue, the plaintiff bears the burden of showing venue is proper.   *Piedmont Label Co. v. Sun Garden Packing Co.,* 598 F.2d 491, 496 (9th Cir. 1979).   "Unlike a Rule 12(b)(6) motion, a motion under Rule 12(b)(3) does not require that the pleadings be accepted as true."   *Color Switch LLC v. Fortafy Games DMCC,* 377 F. Supp. 3d 1075, 1082 (E.D. Cal. 2019), *aff'd,* 818 F. App'x 694 (9th Cir. 2020).   "The court is permitted to consider facts outside of the pleading."   *Id.*

When venue where the plaintiff originally filed suit was improper, 28 U.S.C. § 1406 allows a district court to either (1) transfer the case to another federal district court or (2) dismiss the case.   If the court determines it lacks personal jurisdiction, 28 U.S.C. § 1631 likewise allows the court to either dismiss the case, or in the interests of justice, transfer it "to any other such court . . . in which the action . . . could have been brought at the time it was filed."   *See also Fitbit, Inc. v. Koninklijke Philips N.V.*, 336 F.R.D. 574, 586-87 (N.D. Cal. 2020) ("Where personal jurisdiction is lacking, courts within this district have variously transferred actions under 28 U.S.C. § 1406(a) or 28 U.S.C. § 1631.").

## IV.   **DISCUSSION**

Defendant moves to dismiss Plaintiff's claims for improper venue pursuant to Rule 12(b)(3) and 28 U.S.C. § 1406.   As stated, in copyright cases, venue is proper "in the district in which the defendant or his agent resides or may be found."   28 U.S.C. § 1400(a).   Plaintiff admits that Defendant has its principal office in Sacramento, California, ECF No. 1 at 5, ¶¶ 7-8, which would suggest venue should be in the Eastern District of California (the "Eastern District").   However, "[t]he Ninth Circuit interprets this statutory provision to allow venue 'in any judicial district in which the defendant would be amenable to personal jurisdiction if the district were a separate state.'"   *Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1128 (9th Cir. 2010), *abrogated on other grounds*

-5-

*by Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1069 (9th Cir. 2017) (quoting *Columbia Pictures Television v. Krypton Broad of Birmingham, Inc.*, 106 F.3d 284, 289 (9th Cir. 1997)), *abrogated on other grounds by Axiom*, 874 F.3d at 1069.  "Therefore, the issue of whether venue is proper is coextensive with the inquiry into whether the Court has jurisdiction over [the defendant]."  *Take-Two Interactive Software, Inc. v. Sims*, No. 20-cv-04441-JSW, 2021 WL 2417002, at *3 (N.D. Cal. June 14, 2021).

In its Motion, Defendant argues that venue is improper in the United States District Court for the Southern District of California (the "Southern District") because "[n]o court has ever held that internet advertisement alone is sufficient to subject the advertiser to jurisdiction in the Plaintiff's home forum."  ECF No. 5-1 at 5:20-22 (quoting *Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414 (9th Cir. 1997)).  Defendant contends that the Court should dismiss this case for lack of jurisdiction, which results in improper venue, because the Complaint bases jurisdiction and venue off of Defendant's "static website" and Facebook page, where the alleged infringement is alleged to have occurred, but other courts held such items are insufficient to establish minimum contacts.  *See generally id.*  In his opposition, Plaintiff argues that the Court should deny Defendant's Motion because (1) his forum choice[3] should be given deference; (2) Defendant has sufficient contacts with the Southern District for it to assert personal jurisdiction over Defendant; and (3) Defendant failed to timely raise its objection to venue.  ECF No. 7.  Defendant replies by arguing that (1) Plaintiff's opposition relies on outdated authority; (2) an internet presence is not enough to create a presence within the Southern District; and (3) its Motion was not untimely.  ECF No. 8.

---

[3]      Although the parties refer to the terms "forum" and "venue," which are often confused, "forum" refers to the court or sovereign (*i.e.*, federal court, state court, or arbitration forum) that will decide the matter, while "venue" refers to the place (*i.e.*, county or district) within a forum where a case will be tried.  *See* Garner, Brian A., VENUE, Black's Law Dictionary (11th ed. 2019) (defining "venue" as "[t]he territory, such as a country or other political subdivision, over which a trial court has jurisdiction"); *see also id.* at FORUM (defining "forum" as "[a] court or other judicial body; a place of jurisdiction").

-6-

As outlined below, the Court finds that it has personal jurisdiction over Defendant, making venue proper in the Southern District.  Thus, it **DENIES** Defendant's Motion.

A.  **The Court May Still Address Venue Despite the Untimeliness of Defendant's Motion.**

Because Plaintiff served Defendant on April 26, 2021, ECF No. 4, Defendant had twenty-one (21) days, or until Monday, May 17, 2021, to file a responsive pleading.  *See* FED. R. CIV. P. 12(a).  However, Defendant did not file its Motion until July 13, 2021, almost two months later.  ECF No. 5.  Plaintiff argues that due to Defendant's untimely responsive pleading, Defendant "would be deemed to have waived its challenge to venue. ECF No. 7 at 20:5-6.  Defendant replies that "[o]bjection to venue must be made at the earliest possible opportunity," and it "properly filed its motion for dismissal or transfer of venue before filing an answer or any other type of responsive pleading."  ECF No. 8 at 6:13-16.  Thus, Defendant argues its Motion is timely.

A motion challenging venue is brought pursuant to Rule 12(b)(3).  Rule 12(h) of the Federal Rules of Civil Procedure provides that a party waives any defenses listed in Rule 12(b)(2)-(5), including a Rule 12(b)(3) motion, if that party fails to assert that defense by a motion under Rule 12 or include it in a responsive pleading.  FED. R. CIV. P. 12(h).  Thus, any impropriety in venue may be waived in the absence of timely objection.  *Libby, McNeill, & Libby v. City Nat. Bank*, 592 F.2d 504, 510 (9th Cir. 1978); *Hoffman v. Blaski*, 363 U.S. 335, 343-44 (1960) ("A defendant, properly served with process by a court having subject matter jurisdiction, waives venue by failing seasonably to assert it, or even simply by making default."); *In re Duncan*, 713 F.2d 538, 543 (9th Cir. 1983) ("Venue is a privilege that is waived if not timely asserted."); *United States v. Rescino*, No. 5:20-cv-00881-BLF, 2021 WL 4079260, at *3 (N.D. Cal. Sept. 8, 2021) ("Having concluded that venue is proper in the San Jose Division, the Court need not and does not reach Petitioner's waiver argument.").  For a court to consider an objection to improper venue timely, the objection must be raised before or concurrently with the filing a Rule 12 motion or in the first responsive pleading (if no Rule 12 motion is filed).  *Allied Pros. Ins. Co. v. Harmon*,

No. 8-16-cv-01864-JLS-KES, 2017 WL 5634600, at *7 (C.D. Cal. July 28, 2017) ("Although Harmon now urges this Court to transfer this case under section 1406, Harmon waived any venue defense by failing to join it in his Motion to Dismiss.") (citing 28 U.S.C. § 1406(b); FED. R. CIV. P. 12(g)(2)).

Here, Defendant's Rule 12 motion was late; however, its venue objection was raised concurrently with a Rule 12 motion. The Court also bears in mind that "[c]ases should be decided upon their merits whenever reasonably possible," *NewGen, LLC v. Safe Cig, LLC*, 840 F.3d 606, 616 (9th Cir. 2016), and Plaintiff never sought entry of Defendant's default during the time period it failed to timely respond. Further, the statutory provisions governing venue expressly provide that "[n]othing in this chapter shall impair the jurisdiction of a district court of any matter involving a party who does not interpose timely and sufficient objection to the venue." 28 U.S.C. § 1406(b). Thus, the Court's jurisdiction over the parties is not impaired despite Defendant's untimely Rule 12 motion. Accordingly, the Court continues to address the merits of the issue.

### B.    <u>Venue is Proper in the Southern District of California.</u>

The Due Process Clause of the Fourteenth Amendment limits the power of courts to enter judgments against non-resident defendants who have not been served with process within the boundaries of the forum in which the court asserting *in personam* jurisdiction sits. *Pennoyer v. Neff*, 95 U.S. 714 (1877), *overruled in part by Shaffer v. Heitner*, 433 U.S. 186 (1977); *see also* U.S. CONST. AMEND. XIV, § 1 (preventing states from depriving "any person of life, liberty, or property, without due process of law"). In order to subject a non-resident defendant to personal jurisdiction, that defendant must have enough minimum contacts with the forum state, or in this case, judicial district, that maintenance of the suit does not offend "traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. State of Wash., Office of Unemployment Comp. & Placement*, 326 U.S. 310, 316 (1945). By requiring these individuals to have "fair warning that a particular activity may subject [them] to the jurisdiction of a foreign sovereign," *Shaffer*, 433 U.S. at 218 (Stevens, J., concurring in judgment), the Due Process Clause "gives a degree of

predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit," *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297 (1980). For example, "[i]t is sufficient for purposes of due process that the suit was based on a contract which had substantial connection with that [forum]." *McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 223 (1957). "The forum … [also] does not exceed its powers under the Due Process Clause if it asserts personal jurisdiction over a corporation that delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State" and those products subsequently injure forum consumers. *World-Wide*, 444 U.S. at 297-98.

To determine whether jurisdiction is appropriate, courts first determine whether it is (1) authorized and (2) Constitutional. *Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990). Although 28 U.S.C. §§ 1331 and 1338(a)[4] authorize federal courts to assert exclusive jurisdiction over copyright cases, *Newton v. Shipman*, 718 F.2d 959, 961 (9th Cir. 1983), they do not explicitly authorize personal jurisdiction over a person or entity in such cases. Thus, if no federal statute authorizes jurisdiction, the district court applies the law of the state in which it sits. FED. R. CIV. P. 4(k)(1)(A); *Collegesource v. Academic One*, 653 F.3d 1066, 1073 (9th Cir. 2011). California's long-arm statute permits jurisdiction coextensively with the Due Process Clause. CAL. CIV. PROC. CODE § 410.10; *Mavrix Photo, Inc. v. Brand Tech., Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011).

Once a court confirms statutory authorization for the assertion of jurisdiction exists, as this Court has done, it must proceed to analyze whether personal jurisdiction over a defendant comports with federal due process requirements by examining whether a basis

---

[4]     These statutes vest this Court with subject matter jurisdiction of this case. *See, e.g.*, 28 U.S.C. § 1331 (providing that "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States"). Copyright cases qualify as a civil action "arising under the … laws … of the United States" because 28 U.S.C. § 1338(a) vests district courts with "original jurisdiction of any civil action arising under any Act of Congress relating to … copyrights and trademarks."

exists to assert general jurisdiction or specific jurisdiction. *Loomis v. Slendertone Distribution, Inc.*, 420 F. Supp. 3d 1046, 1064 (S.D. Cal. 2019) (Anello, J.). As outlined below, the Court finds that while the facts of this case show no basis for general personal jurisdiction, a basis for specific personal jurisdiction exists.

### 1. *General Jurisdiction*

"General jurisdiction—as applied to a corporation—arises when a foreign corporation's affiliations with the [forum] are so continuous and systematic as to render it essentially at home in the forum ..." *Loomis*, 420 F. Supp. 3d at 1064-65 (internal quotations omitted). Courts have asserted general jurisdiction over a defendant where the defendant (1) has been served with process while voluntarily within the forum, (2) is domiciled within the forum, or (3) consents to the Court's jurisdiction. *J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 880-82 (2011) (Kennedy, J., plurality); *Pennoyer*, 95 U.S. at 722 (1877), *overruled in part by Shaffer*, 433 U.S. 186. "Each of these examples reveal circumstances, or a course of conduct, from which it is proper to infer an intention to benefit from and thus an intention to submit to the laws of the forum State." *J. McIntyre*, 564 U.S. at 881 (citing *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 476 (1985)). Here, none of the aforementioned bases for general jurisdiction appear to exist. Further, because the parties only address whether the Court has specific personal jurisdiction rather than general personal jurisdiction, the Court construes both parties as having waived any argument that the Court possess general jurisdiction over Defendant.

### 2. *Specific Jurisdiction*

"Where general jurisdiction is inappropriate, a court may still exercise specific jurisdiction if the defendant has sufficient contacts with the forum state in relation to the cause[s] of action." *Sher*, 911 F.2d at 1361 (citing *Data Disc, Inc. v. Sys. Tech. Assocs.*, Inc., 557 F.2d 1280, 1286 (9th Cir. 1977)). To evaluate whether the Court should assert specific jurisdiction over Defendant, the Court applies the Ninth Circuit's three-pronged test for determining whether a defendant has sufficient minimum contacts with the forum state, or in this case, judicial district. *Glob. Commodities Trading Grp., Inc. v. Beneficio*

*de Arroz Choloma, S.A.*, 972 F.3d 1101, 1107 (9th Cir. 2020).  This test examines whether the (1) defendant has *either* purposefully (a) directed his activities towards the judicial district or initiated a transaction with the judicial district or one of its residents or (b) availed himself of the privileges and benefits of the judicial district permitting him to benefit from the protections of its laws; (2) cause of action arises out of the defendant's activities related to the judicial district; and (3) assertion of jurisdiction is reasonable and comports with "fair play and substantial justice." *See id.*

As set forth below, the Court finds that (1) Defendant has purposefully directed its activities towards the Southern District; (2) the cause of action arises from Defendant's activities within the Southern District; and (3) asserting personal jurisdiction over Defendant comports with fair play and substantial justice.  Consequently, because the assertion of personal jurisdiction over Defendant is proper, venue is proper in the Southern District.

> a.   <u>*Defendant has purposefully directed its activities towards the Southern District.*</u>

Although often conflated, purposeful direction and purposeful availment remain two distinguishable concepts.  *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004).  Purposeful availment is most frequently analyzed in suits involving a defendant's actions within the forum (such as contracts), while purposeful direction utilizes evidence of a defendant's actions outside the forum state but directed at the forum (such as distribution or advertising) in order to demonstrate the defendant purposefully directed that conduct.  *Id.*  The purposeful direction analysis relates more to suits involving torts, such as intellectual property disputes like the instant copyright dispute.  *See Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1321 (9th Cir. 1998).

When examining purposeful direction, courts apply the "*Calder* effects test" established by the Supreme Court's holding that a foreign act aimed at and producing an effect in the forum state "satisfies the first prong of the specific jurisdiction analysis." *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1156 (9th Cir. 2006) (citing *Calder v. Jones*,

465 U.S. 783 (1984)).  The *Calder* effects test examines whether a defendant has (1) acted intentionally, (2) expressly aiming conduct at the forum state, and (3) causing a harm which was foreseeably going to be suffered in the forum state.  *Id.*

The Complaint alleges that Defendant has purposefully directed its activities towards the Southern District because Defendant (1) *actively advertises* to California residents on its website and social media platforms, including Facebook, and specifically *offers its services to people whose properties were damaged due to the California wildfires*, including residents of this District whose properties were damaged by wildfires that occurred in this District from at least 2017 through 2019, ECF No. 1 at 7, ¶ 12; (2) intentionally targeted Plaintiff's copyrighted work, the Memory Jogger, *id.* at 8, ¶ 13; and (3) offered the Memory Jogger for free through its website, Facebook page, and seminar invitations, which were accessible and available to Internet users residing in this District, *id.* at 8, ¶ 13.  As set forth below, the Court finds that these allegations of the Complaint show (1) Defendant committed intentional acts, (2) expressly aimed at the Southern District, which (3) caused a harm that was foreseeably going to be suffered in this District.

       i.      <u>Defendant committed an intentional act by downloading Plaintiff's product and offering it for free on its website.</u>

An intentional act is one where the actor intends the "actual, physical act" as opposed to intending a result or consequence of an act.  *Brayton*, 606 F.3d at 1128.  In *Holland Am., Inc. v. Wartsila N. Am., Inc.*, 485 F.3d 450, 453, 460 (9th Cir. 2007), the court distinguished between intentional tort actions and negligence, holding that the defendant had not acted intentionally by negligently failing to adequately survey a ship resulting in its loss.  In *Mavrix Photo, Inc. v. Brand Tech., Inc.*, on the other hand, the Ninth Circuit held that there was "no question" that the defendant committed a clear intentional act by reposting allegedly infringing versions of the plaintiff's photos.  647 F.3d at 1229.

Here, according to the Complaint, Defendant operated a website offering free downloads of Plaintiff's Memory Jogger on its website, https://www.gostatewide.com, using the exact same title, "The Personal Property Memory Jogger & Home Inventory Tool," and claiming Plaintiff's work as its own template.  ECF No. 1 at 3, ¶ 3; *see also*

-12-

Exhibit "A" to Complaint, ECF No. 1-2 at 1 (showing Defendant's website offering "The Personal Property Memory Jogger & Home Inventory Tool" to any visitors who provided their e-mail).  In order to access the Memory Jogger (so it could download and re-post it), Defendant had to visit Plaintiff's website, which plainly stated that he "lives in San Diego, California with his wife and two children."   ECF No. 7 at 12:7-9 (citing https://theredguidetorecovery.com/about-the-author/).   Defendant "was specifically required to download [Plaintiff]'s Memory Jogger in order to obtain a copy for its infringing activities."  *Id.* at 13:9-11.  Defendant "copied the Memory Jogger verbatim, including specific typos [Plaintiff] included in the Memory Jogger to identify infringement."  *Id.* at 12:15-18.   Then, Defendant "referred to the Memory Jogger as 'our template' (*i.e.*, suggesting [Defendant] was the author) and that [Defendant] was providing it as a 'courtesy' to the public."  *Id.* at 13:2-5.  A visitor to Defendant's website only needed to enter his or her e-mail address to receive the Memory Jogger, and Defendant encouraged visitors to "share" its webpage offering the Memory Jogger with their friends by providing a link, which would allow them to generate a post on their own Facebook pages.  ECF No. 1 at 3, ¶ 3.  As of March 4, 2020, the link to Defendant's webpage had been shared on Facebook at least 265 occasions.  *Id.* at 3-4, ¶ 3.  Defendant also "actively used [Plaintiff]'s Memory Jogger to lure fire victims to its seminars, the very type of seminars [Plaintiff] provides as an expert in the field of fire restoration."  ECF No. 7 at 13:11-13.

Such allegations of copyright infringement have been held sufficient to qualify as an intentional act satisfying the first element of the *Calder* effects test.  *See, e.g.*, *Gem v. Groupon, Inc.*, No. 2:20-LACV-01431-JAK-SKX, 2021 WL 4691151, at *4 (C.D. Cal. Aug. 25, 2021) (noting that "[c]opyright infringement is an intentional act," and thus, "[s]uch alleged conduct satisfies the first factor of the effects test") (citing *Mavrix*, 647 F.3d at 1229); *CollegeSource*, 653 F.3d at 1077 ("First, AcademyOne does not dispute that it committed intentional acts by downloading CollegeSource's catalogs, republishing them on its own websites, and obtaining course descriptions from those catalogs."); *Brayton*, 606 F.3d at 1128 ("Recordon committed an intentional act when it created and posted an

elder law section on its website that infringed Brayton Purcell's copyright."); *Incredible Features, Inc. v. BackChina, LLC*, 476 F. Supp. 3d 1028, 1031 (C.D. Cal. 2020) ("There is no dispute that Defendant acted intentionally in posting to its website the pictures over which Plaintiffs claim ownership."). Like the *Mavrix*, *CollegeSource*, *Brayton*, and *Incredible* defendants, the Complaint alleges that Defendant committed intentional acts by operating an interactive website, on which it offered Plaintiff's copyrighted Memory Jogger, unlike the untargeted negligence in *Holland*.

The Court finds the intentional act prong satisfied by the Complaint's allegations.

ii.   <u>Defendant expressly aimed its conduct at the Southern District.</u>

For an act (or website) to be expressly aimed, a defendant must engage in wrongful conduct (1) expressly and individually targeted at a plaintiff the defendant knows (or should have known) to be a resident of the forum state, *Bancroft & Masters, Inc. v. August Nat'l, Inc.*, 223 F.3d 1082, 1087 (9th Cir. 2000), *modified by Yahoo! Inc.*, 433 F.3d at 1207, (2) which constitutes "something more" than just an act with the potential to cause foreseeable consequences in the forum state, *Pebble Beach*, 453 F.3d at 1156. When examining these contacts in the context of a website, the Ninth Circuit typically examines the level of "activity" of a website using the Western District of Pennsylvania's sliding scale established in *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119, 1124 (W.D. Pa. 1997), and then compares the website to decide whether it more closely resembles either *Panavision Intern., L.P. v. Toeppen*, 141 F.3d 1316 (9th Cir. 1998), or *Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414 (9th Cir. 1997). *See also Rio Properties, Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1020-21 (9th Cir. 2002) (holding that "operating even a passive website in conjunction with 'something more'—conduct directly targeting the forum—is sufficient to confer personal jurisdiction").

Courts find this prong satisfied "where a plaintiff alleges that the defendant individually targeted him by misusing his intellectual property on the defendant's website for the purpose of competing with the plaintiff in the forum." *CollegeSource*, 653 F.3d at 1077. However, courts will not find that "tortious conduct on a nationally accessible [but

-14-

1   passive] website is expressly aimed at any, or all, of the forums in which the website can

2   be viewed." *Mavrix*, 647 F.3d at 1229.  Rather, as stated, "something more" than operating

3   a passive website must be present to satisfy the express aiming prong. *Id.*  That "something

4   more" must evidence "conduct directly targeting the forum." *Id.*  For example, "where, as

5   here, a website with national viewership and scope appeals to, and profits from, an audience

6   in a particular state, the site's operators can be said to have 'expressly aimed' at that state."

7   *Id.* at 1231; *see also AMA Multimedia, LLC v. Wanat*, 970 F.3d 1201, 1210 (9th Cir.

8   2020), *cert. denied,* No. 20-1430, 2021 WL 4507661 (U.S. Oct. 4, 2021) (finding the

9   defendant had "failed to meet its burden of demonstrating that [the defendant] expressly

10  aimed his intentional acts at the United States" even though the plaintiff alleged the

11  defendant had (1) used geotargeted advertisements, which purportedly corresponded to

12  forum revenue, (2) had 19.21% of the site's total visitors from the forum, (3) listed Terms

13  of Service on its website, which were referred to as a contractual agreement, and (4) used

14  a vendor from the forum which offered fast speeds in the forum).

15       Plaintiff argues that Defendant should be subject to the jurisdiction of the Southern

16  District because (1) Defendant knew Plaintiff resided in San Diego, California, and (2)

17  upon accessing Plaintiff's webpage, which Defendant was required to do in order to access

18  the Memory Jogger, would have realized he operated in the same business or industry as

19  Defendant (*i.e.*, fire and natural disaster restoration).  ECF No. 7 at 15:1-6.  However, the

20  Supreme Court has made clear that a defendant may not be forced to litigate in a forum

21  solely because the defendant knew the plaintiff resided in the forum.  *See, e.g.,¸ Walden v.*

22  *Fiore*, 571 U.S. 277, 279 (2014) (holding that "the court in Nevada may not exercise

23  personal jurisdiction under these circumstances" solely "on the basis that [the defendant]

24  knew his allegedly tortious conduct in Georgia would delay the return of funds to plaintiffs

25  with connections to Nevada").  Accordingly, Defendant's mere knowledge that Plaintiff

26  and his business resided in the Southern District is not enough to subject Defendant to

27  jurisdiction in this District.  *See id.*

28       As stated, the decision *in Zippo Mfg. Co.*, established a sliding scale of activity used

-15-

to gauge personal jurisdiction over the Internet.  *See also Cybersell*, 130 F.3d 414 (following the *Zippo* sliding scale in the context of the specific jurisdiction inquiry); *see also Loomis*, 420 F. Supp. 3d at 1068-69 (discussing the *Zippo* sliding scale).  The *Zippo* court exercised personal jurisdiction over Dot Com's active website permitting commercial activity and displaying ads and information.  *Zippo*, 952 F. Supp. at 1126.  While "active websites" permitting contracts with forum residents and the exchange of files, establish a proper ground for personal jurisdiction, "passive websites" simply displaying information do not.  *Id.*  "The middle ground is occupied by interactive Web sites where a user can exchange information with the host computer."  *Id.*; *see also Loomis*, 420 F. Supp. 3d at 1068 (noting that "'interactive' websites … function for commercial purposes and … users [can] exchange information").  Such "interactive websites" refuse to easily be categorized and force courts to examine their level of interactivity and commercial capacities.  *Zippo*, 952 F. Supp. at 1126; *Loomis*, 420 F. Supp. 3d at 1068 ("Personal jurisdiction is appropriate when an entity is conducting business over the internet.").  "Where a website is somewhere between the two extremes, the likelihood that personal jurisdiction can be constitutionally exercised is directly proportionate to the nature and quality of commercial activity that an entity conducts over the internet."  *Loomis*, 420 F. Supp. 3d at 1068-69.

Other courts have addressed what constitutes "something more" than an act with potential foreseeable consequences to establish jurisdiction.  For example, in *Panavision*, the court exercised jurisdiction over the defendant despite his operation of "a mere passive website" because he had expressly aimed his conduct at California through his intentional registration of domain names for the purposes of extortion.  *See Panavision*, 141 F.3d at 1322.  The defendant knew the plaintiff maintained its principal place of business in California and would likely suffer harm there.  *Id.*  Conversely, in *Cybersell*, although the defendant operated a website more interactive than the *Zippo* and *Panavision* websites, the Ninth Circuit concluded the defendant's conduct failed to satisfy the first prong of its minimum contacts test—requiring either a showing of purposeful availment or purposeful direction—as the defendant did not expressly aim its conduct at the forum.  130 F.3d at

-16-

419-20 (noting that the defendant's "web page simply was not aimed intentionally at Arizona knowing that harm was likely to be caused there to Cybersell AZ").  Although the defendant's website allowed users to sign up for its services, indicate interest, and listed a local telephone number, the defendant did not conduct any business in the forum state, established no contracts there, and did not encourage forum residents to access the site.  *Id.* at 419.  Four years later, in *Rio Properties*, the Ninth Circuit held that where the defendant "operated a website that 'allow[ed] customers throughout the United States and the world to place wagers on sporting events,'" the defendant "engaged in 'something more' than the operation of a passive website" by specifically targeting customers in the forum state through radio and print advertisements.  284 F.3d at 1020–21.  More recently, two years ago in *Loomis v. Slendertone Distribution, Inc.*, another judge in the Southern District found "something more" where the defendant (1) had a designated agent for service of process and was registered with the California Secretary of State and (2) directly targeted California with advertisements directed to California individuals and targeting the "California fitness community" to help advertise its product.  420 F. Supp. 3d at 1070.

Here, Defendant's website was interactive because it required individuals to enter their e-mail address in order to download the infringing version of the Memory Jogger. *See Loomis*, 420 F. Supp. 3d at 1070 ("By having a 'CLICK HERE TO ORDER' function directly on its site, Defendant allows higher interconnectivity and an exchange of information necessary for the commercial transaction.").  It also encouraged visitors to "Share this page with [their] friends" on their own Facebook pages.  *See* Exhibit A to Complaint, ECF No. 1-2 at 1.  Thus, like the defendant in *Zippo*, Defendant's website permitted online distribution of the product.  952 F. Supp. at 1125-26 ("Dot Com has contracted with approximately 3,000 individuals and seven Internet access providers in Pennsylvania," and "[t]he intended object of these transactions has been the downloading of the electronic messages that form the basis of this suit in Pennsylvania").  However, a simple interactive website will not establish jurisdiction.  Like *Cybersell*, where the court did not find express aiming, Defendant's website also advertises its services and can be

-17-

accessed by residents of the Southern District, but it does not appear to permit any commercial transaction of business.   130 F.3d at 419.   Unlike *Cybersell*, however, Defendant did encourage those who visited its website to download Plaintiff's Memory Jogger.   That being said, there is no evidence any resident of the Southern District ever visited Defendant's website or did, in fact, download the Memory Jogger.   As suggested by Defendant's name, it appears Defendant distributed the Memory Jogger "statewide." Nonetheless, Plaintiff argues that after plagiarizing Plaintiff's Memory Jogger, Defendant did not merely provide a link to the Memory Jogger.   ECF No. 7 at 15:6-7.   Instead, Defendant actively solicited fire victims in the Southern District's with the lure of a "free" Memory Jogger, which it would only provide if they provided Defendant with an e-mail address.   *Id.* at 15:7-9.   Specifically, Plaintiff pleads that Defendant "marketed and advertised [its] services to residents whose properties were damaged by wildfires that occurred in this District from at least 2017 through 2019."[5]  ECF No. 1 at 7, ¶ 7.   Thus, the Complaint pleads that Defendant "actively advertise[d] to California residents on its website and social media platforms, including Facebook, and specifically offer[ed] its services to people whose properties were damaged due to the California wildfires, including residents *of this District*."   *Id.* (emphasis added).

---

[5]      The issue of whether the Court should assume true Plaintiff's allegations that Defendant targeted residents of the Southern District depends on whether Plaintiff's jurisdictional attack is a facial or factual attack. In a facial attack, the moving party "asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). In a factual attack, the moving party "disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Id.* Although "[u]nlike a Rule 12(b)(6) motion, a motion under Rule 12(b)(3) does not require that the pleadings be accepted as true," *Color Switch*, 377 F. Supp. 3d at 1082, Defendant has not refuted Plaintiff's allegations that it targeted residents of the Southern District by providing any evidence to the contrary. Thus, the Court construes Defendant's Motion as a facial attack on the Court's jurisdiction and assumes true Plaintiff's allegations that Defendant targeted individuals in the Southern District. If that is true, the Court finds, as discussed below, that would show express aiming.

-18-

Courts have also found express aiming where the parties are competitors in a small or specialized industry. *Compare Gem*, 2021 WL 4691151, at *4 (holding that conclusory allegations that "substantial" sales took place in California were insufficient to show that the defendant intended to compete with the plaintiff in the forum because those sales could be "random, fortuitous, and attenuated") *with CollegeSource*, 653 F.3d at 1078 (finding express aiming where the parties "were direct competitors in a relatively small industry," and it was "undisputed that [the defendant] maintained the misappropriated catalogs on its websites for several months before delivery of the cease-and-desist letter"); *Brayton Purcell LLP*, 606 F.3d at 1129-31 (finding individual targeting in satisfaction of the express aiming prong where the nonresident defendant law firm plagiarized copyrighted material from the resident plaintiff's website and republished the material because both of the parties worked in the specialized area of elder abuse law). Plaintiff argues that the Court should find express aiming because "much like *Brayton Purcell LLP*, the fire restoration business is a unique area of construction, and one where [Plaintiff] is an established expert." ECF No. 7 at 15:13-15. Plaintiff states that Defendant "actively used [Plaintiff]'s Memory Jogger to lure fire victims to its seminars, the very type of seminars [Plaintiff] provides as an expert in the field of fire restoration." *Id.* at 13:11-13.

In *Brayton Purcell*, the Ninth Circuit affirmed the decision of the Northern District of California denying the defendant's motion to dismiss for improper venue. 606 F.3d at 1131. The *Brayton* plaintiff, a law firm located within the Northern District of California sued the defendant, a San Diego-based law firm with no clients in the Northern District, for, *inter alia*, copyright infringement. *Id.* at 1126. Both parties practiced within the niche area of elder law, and the plaintiff filed suit after discovering that "[t]he elder law section of [the defendant]'s website consisted entirely of material copied verbatim from, and without attribution to, [the plaintiff]'s own website." *Id.* at 1127. Indeed, much like the *Brayton* parties, which both practiced in the niche area of elder law, *id.* at 1127, both Plaintiff and Defendant practice in the niche area of fire restoration. Further, like the *Brayton* defendant, which posted the plaintiff's elder law section on its own website

-19-

verbatim, *id.*, Defendant posted Plaintiff's Memory Jogger on its website.  Thus, like the *Brayton* court, this Court finds that Defendant expressly aimed its conduct at the Southern District.  However, Defendant argues post-*Brayton* case law shows *Brayton* is incorrect.

Defendant argues that "Plaintiff's argument that [Defendant]'s use of the internet is a basis for finding specific personal jurisdiction in the Southern District of California is incorrect."  ECF No. 8 at 2:8-10.  However, the Court does not construe Plaintiff's Opposition as arguing that the *mere* use of the internet was sufficient to create a basis for the Court to assert specific jurisdiction.  Further, the only authority Defendant cites for its proposition that use of the internet is not enough to establish specific personal jurisdiction is *Brayton*'s dissenting opinion, *see id.* at 2:10-21, which unlike the majority opinion, is not binding authority on this Court.  The portion relied upon refers to Justice Reinhardt's dissenting opinion, which acknowledges his concern that the majority opinion meant that "every website operator faces the potential that he will be hailed into far-away courts based upon allegations of intellectual property infringement, if he happens to know where the alleged owner of the property rights resides, and he is not barred from doing business there."  *Id.* at 2:10-20.  However, the Supreme Court's opinion in *Walden* four years later, addressed this concern by holding that mere knowledge of the intellectual property owner's residence is not enough to create a basis for specific personal jurisdiction.  134 S.Ct. at 1122 (noting that "the plaintiff cannot be the only link between the defendant and the forum").  Further, although post-*Brayton* case law makes clear that mere individualized targeting will not establish express aiming, this Court finds the allegations describe more than "mere individualized targeting."

Finally, Defendant also argues that the post-*Brayton* cases of *Picot v. Weston*, 780 F.3d 1206 (9th Cir. 2015) and *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064 (9th Cir. 2017) show why express aiming is not present in this case.  As outlined below, the Court finds neither case persuasive for finding that Defendant did not expressly aim its conduct towards the Southern District.

In *Picot v. Weston*, 780 F.3d 1206, 1209 (9th Cir. 2015), the Ninth Circuit affirmed

-20-

the United States District Court for the Northern District of California's decision dismissing a case between a California plaintiff and Michigan defendant for lack of personal jurisdiction. *Picoh* involved a plaintiff who sued a partner with whom he had developed an electrolyte for use in hydrogen fuel cells. *Id.* at 1209. After the plaintiff sold the technology without telling the defendant, the defendant claimed he was entitled to a share of the proceeds. *Id.* In response, the plaintiff sued the defendant seeking a declaratory judgment that no agreement had been made between the parties and for intentional interference with his sales contract. *Id.* In analyzing the plaintiff's tort-based claim for intentional interference with a contract, the court found the intentional act prong easily satisfied but not the express aiming prong. *Id.* at 1214.

The *Picot* court relied on the Supreme Court's decision in *Walden* the year before, to reiterate that a court's "personal jurisdiction analysis must focus on the defendant's contacts with the forum state, not the defendant's contacts with a resident of the forum." *Picot*, 780 F.3d at 1214. It concluded that the defendant's "actions did not connect him with California in a way sufficient to support the assertion of personal jurisdiction over him." *Id.* at 1215. Rather, his "allegedly tortious conduct consist[ed] of making statements to [a third-party] (an Ohio resident) that caused [a third-party corporate entity] (a Delaware corporation with offices in Ohio) to cease making payments into two trusts (in Wyoming and Australia)." *Id.* The defendant performed these acts "from his residence in Michigan, without entering California, contacting any person in California, or otherwise reaching out to California." *Id.* In other words, "none of [the defendant's] challenged conduct had anything to do with [California] itself." *Id.* Moreover, as in *Walden,* [the plaintiff]'s injury … [was] entirely personal to him and would follow him wherever he might choose to live or travel." *Id.* Thus, the effects of the defendant's actions were not connected enough to make those effects a proper basis for jurisdiction. *Id.*

Defendant argues that just as in *Picot*, Plaintiff's "injury was personal to him and would follow him wherever he might choose to live or travel." ECF No. 8 at 4:3-22. However, *Picot* differs from this case in that it involved a defendant from an entirely

-21-

different state, rather than a defendant from a different judicial district within the same state. *Id.* at 1209. Further, *Picot* also involved both a purposeful availment and purposeful direction analysis given it involved both contractual and tort based claims. *Id.* at 1212-14. Like the *Picot* defendant, who was a Michigan resident who performed his acts from Michigan, Defendant is a resident of the Eastern District and performed its acts from the Eastern District. However, unlike *Picot*, the Complaint alleges that Defendant did, in fact, contact (via advertisements) residents of the Southern District, thereby "reaching out" to them. Defendant also harmed not just Plaintiff personally but also his business, which is located in the Southern District. Thus, the Court does not find *Picot* to weigh against a finding of express aiming.

Next, Defendant relies on *Axiom Foods, Inc. v. Acerchem Int'l, Inc.* as another basis to argue that this case involves insufficient contacts for the Southern District to assert jurisdiction over Defendant. Reply at 4:23-6:21. In *Axiom*, the Ninth Circuit affirmed the decision of the Central District of California dismissing a copyright infringement action brought by California and Arizona corporations against Chinese and United Kingdom defendants for lack of personal jurisdiction. 874 F.3d at 1066. The *Axiom* case arose after the defendants sent a newsletter promoting one of their products and used the plaintiffs' logos in the newsletter. *Id.* at 1067. "No more than ten recipients [of the newsletter] were located in California," while most of the recipients were located in Western Europe. *Id.*

The *Axiom* court noted that "[f]ollowing *Walden*, … a theory of individualized targeting may remain relevant to the minimum contacts inquiry … [but] will not, on its own, support the exercise of specific jurisdiction, absent compliance with what *Walden* requires." 874 F.3d at 1070. Applying those principles, the *Axiom* court reasoned that it lacked "information concerning the residence of the 55 recipients and the legal and operational relationships among the 55 recipients and their respective companies." *Id.* Further, "any California contacts [the defendants] created by sending a single newsletter to 55 recipients of unknown residence [were] too 'attenuated,' and 'isolated,' to support the exercise of jurisdiction." *Id.* Thus, the court affirmed the lower

1   court's decision declining to exercise jurisdiction because it could "hardly be said that
2   'California was the focal point of the newsletter and of the harm suffered.'" *Id.* at 1070-71.

3   Defendant argues that focusing on its own contacts with the Southern District
4   "reveals a lack of sufficient contacts with the Southern District." ECF No. 8 at 5:20-21.
5   Defendant states that its "Facebook page and website are similar to the defendant in *Axiom*
6   sending a newsletter to 55 recipients of unknown residence." *Id.* at 5:26-27. Defendant
7   contends that "[s]imilar to the defendant's acts in *Axiom*, it can hardly be said that the
8   Southern District was the focal point for [Defendant]'s Facebook page, website, or the
9   seminars it conduct in Chico, California." *Id.* at 6:3-5. Instead, Defendant believes "[t]he
10  allegations of the complaint show that [Defendant]'s allegedly wrongful conduct took place
11  in the Eastern District," which is where Defendant is located. *Id.* at 6:5-7. The Court
12  disagrees. The allegations of the Complaint, unlike the allegations in *Axiom*, clearly allege
13  that Defendant actively advertised to California residents on its website and social media
14  platforms, including Facebook, including residents of the Southern District whose
15  properties were damaged by wildfires that occurred in this District from at least 2017
16  through 2019, ECF No. 1 at 7, ¶ 12. Thus, unlike the handful of recipients of the newsletter
17  in *Axiom*, who were either unknown or located in California, Plaintiff alleges Defendant
18  expressly aimed and targeted residents of the Southern District.

19  The Court also agrees that Plaintiff and Defendant are in competing, specialized
20  industries, just like the parties in *Brayton* and *CollegeSource*. Thus, assuming the truth of
21  Plaintiff's allegations (*i.e.*, that it advertised or targeted fire victims from the Southern
22  District), then, like the *Brayton* and *CollegeSource* defendants, Defendant expressly aimed
23  its intentional conduct at the Southern District.

   iii. <u>Defendant's conduct resulted in foreseeable harm in the Southern District.</u>

26  For an act to cause foreseeable harm in the forum state, a plaintiff must show (1) a
27  defendant's intentional and harmful conduct caused a jurisdictionally significant harm
28  suffered within the forum, (2) that foreseeably caused harm or effects in that forum due to

the defendant's knowledge of the plaintiff's residence or principal place of business within the forum, or knowledge otherwise suggesting the plaintiff had reason to suffer harm in that forum. *See Mavrix*, 647 F.3d at 1231; *Bancroft*, 223 F.3d 1082 at 1087-88, *modified by Yahoo! Inc.*, 433 F.3d at 1207.

For example, in *CollegeSource*, the Ninth Circuit concluded that the defendant's alleged misappropriation of the plaintiff's catalogs "inflicted 'harm that the defendant knows is likely to be suffered in the forum state.'" 653 F.3d at 1079. It also acknowledged that the plaintiff had "alleged economic loss based on [the defendant]'s misappropriation of its catalogs and harm to [the plaintiff]'s competitive edge in the market of assisting California students and schools in the college transfer process." *Id.* First, the court noted that it had "repeatedly held that a corporation incurs economic loss, for jurisdictional purposes, in the forum of its principal place of business." *Id.* Second, it reasoned that "any harm to [the plaintiff]'s competitive advantage, such as 'decreased business and profits,' was felt in the forum of the relevant market.'" *Id.* (quoting *Brayton Purcell,* 606 F.3d at 1131). Similarly, in *Brayton*, in concluding that a dismissal for improper venue was not warranted, the Ninth Circuit found the last prong of the *Calder* effects test satisfied because it was foreseeable that the plaintiff would be harmed by infringement of its copyright in the forum where it "was known to reside." *Brayton*, 606 F.3d at 1131. The defendant knew the plaintiff to be a resident of the forum yet still committed the intentional act of infringement, placing itself in direction competition, resulting in foreseeable harm. *Id.*

Much like *Brayton*, Defendant's website and Facebook pages were accessible to residents of the Southern District, and Defendant, according to Plaintiff's allegations, solicited residents of the Southern District. ECF No. 7 at 16:9-11 (citing Complaint, ECF No. 1 at ¶ 12). Plaintiff argues that by attempting "to build a massive database of potential leads for fire restoration work," Defendant "plainly harmed" Plaintiff, "who is in the same business" and "also seeks leads and contact information from fire victims." *Id.* at 19:13-19. Like the *CollegeSource* court, the Court agrees that Plaintiff's business suffered its "economic loss, for jurisdictional purposes, in the forum of its principal place of business,"

which is San Diego, California, a city in the Southern District. 653 F.3d at 1079. Further, also like the *CollegeSource* court, this Court agrees that any harm to Plaintiff's competitive advantage in the fire restoration industry would be felt "in the forum of the relevant market," which Plaintiff's allegations plausibly plead is San Diego or the Southern District. Thus, the Court agrees that this conduct satisfied the third prong of the *Calder* effects test.

In sum, Defendant has committed an intentional act, which it expressly aimed at the Southern District, which resulted in foreseeable harm. Thus, the Court finds that Defendant purposefully directed its activities towards the Southern District under the *Calder* test.

### b.   *The claim arises within the Southern District.*

To determine whether the cause of action arises out of "forum-related activities," the Ninth Circuit looks to whether "but for" the forum contacts the claim would have arisen. *Ballard v. Savage*, 65 F.3d 1495, 1500 (9th Cir. 1995). For example, in *Ballard*, the Ninth Circuit concluded the plaintiff's claim arising out of the foreign defendant's Ponzi Scheme would not have arisen "but for" the defendant's contacts with the forum (*i.e.*, doing business in the United States). *Ballard*, 65 F.3d at 1500. Similarly, in *Panavision*, the same court held that "but for" the defendant's actions (*i.e.*, registration of the plaintiff's trademarks as his own domain names on the Internet), the harm (*i.e.*, trademark infringement) would not have occurred. *Panavision*, 141 F.3d at 1322.

Plaintiff argues that Defendant specifically accessed his website, downloaded the Memory Jogger, and used the Memory Jogger to solicit business away from him. ECF No. 7 at 17:5-7. He alleges that "[b]ut for [Defendant]'s acts, [he] would not have been injured, suffering economic and other loss due to the confusion and unfair competition created by [Defendant]'s unlawful acts." ECF No. 1 at 10, ¶ 17. The Court agrees that "but for" Defendant's forum related activities (*i.e.*, soliciting business within the Southern District away from Plaintiff), Plaintiff's harm would not have arisen. Thus, the second prong of the Ninth Circuit's test for specific jurisdiction is also satisfied.

/ / /

/ / /

c.    *Asserting personal jurisdiction over Defendant would not be unreasonable.*

If a plaintiff carries the burden of proof as to the first two prongs, the burden switches to the defendant to prove the third prong of the Ninth Circuit's test: whether the assertion of specific jurisdiction would be unreasonable. *Core-Vent Corp. v. Nobel Indus. AB*, 11 F.3d 1482, 1487 (9th Cir. 1993) *modified by Yahoo! Inc.*, 433 F.3d at 1207. In order to determine whether a defendant may defeat jurisdiction, courts consider seven factors: (1) the extent to which the defendant has purposefully injected its products into the forum state; (2) the burden on the defendant of defending itself in the forum state; (3) potential conflict with the sovereignty of the defendant's forum; (4) the interest of the forum state in adjudicating the claim; (5) efficiency in resolving the controversy; (6) the plaintiff's interest in resolving the dispute in that forum; and (7) the option of resolving the dispute in an alternative forum. *Panavision*, 141 F.3d at 1323 (citing *Burger King Corp.*, 471 U.S. at 476-77).

Plaintiff notes that Defendant's Motion "advances no argument or evidence that the exercise of jurisdiction over it by this District would be contrary to notions of fair play and substantial justice." ECF No. 7 at 18:5-7. In fact, neither Defendant's Motion nor its Reply address how it would be burdened by litigating in the Southern District. *See generally* ECF Nos. 5, 7. Rather, Defendant conclusorily argues that the assertion of specific jurisdiction would be unreasonable without explaining why or how. *Id.* Defendant also fails to address most, if not all, of the reasonableness factors with the exception of arguing that the Eastern District of California qualifies as a viable alternative forum. Plaintiff also contends that even if Defendant had advanced such arguments, the Motion would still fail because "[a]t best, [Defendant] might argue it would be more convenient to it to litigate in the Eastern District." *Id.* at 18:7-10. However, Plaintiff notes "[s]uch assertions have been rejected as insufficient in warranting dismissal or transfer for convenience purposes." *Id.* at 18:10-11.

In *CollegeSource, Inc. v. AcademyOne, Inc.*, the defendant argued that it was "'a small company based in suburban Philadelphia,' whose "key employees and witnesses

[were] in Pennsylvania,' such that defending [that] action in California would be 'onerous.'" 653 F.3d at 1080. However, the court found that while some important witnesses might reside in Pennsylvania, due to "advances in transportation and telecommunications and the increasing interstate practice of law, any burden [of litigation in a forum other than one's residence] is substantially less than in days past." *Id.* This was evidenced by the fact that the defendant's "counsel was able to participate in oral argument on appeal before [the] court via videoconference." *Id.* Thus, while the burden slightly favored the defendant, on the whole, the defendant had not shown that the exercise of jurisdiction by the Southern District, instead of the proposed alternative forum of the Eastern District of Pennsylvania, would be unreasonable. *Id.* at 1080.

Similarly, in the *Brayton* opinion that was later affirmed by the Ninth Circuit, the district court noted that the burden on the defendant "to litigate the case in [the Northern] District rather than the Southern District of California [was] minimal." *Brayton Purcell LLP v. Recordon & Recordon*, 361 F. Supp. 2d 1135, 1143 (N.D. Cal. 2005), *aff'd,* 575 F.3d 981 (9th Cir. 2009), *withdrawn and superseded on denial of reh'g en banc,* 606 F.3d 1124 (9th Cir. 2010), and *aff'd,* 606 F.3d 1124 (9th Cir. 2010). It noted that "[w]ith respect to discovery, relevant documents will be found in both Districts, as will relevant witnesses." *Id.* Further, "[p]resumably, [witness] depositions will take place wherever the witnesses reside, be it in the Northern or Southern District." *Id.* Thus, "[t]he main burden on [the defendant] would be the time and cost of travel for its counsel to attend hearings in the Northern District." *Id.* at 1143-44. However, the defendant could easily "retain local counsel." *Id.* at 1144. Finally, "the distance between San Diego and San Francisco is not great, and travel between the cities is not especially inconvenient." *Id.* "While the balance of convenience tilt[ed] slightly in favor of [the defendant], the Court conclude[d] that [the defendant] ha[d] not presented a compelling case demonstrating the exercise of jurisdiction would not be reasonable." *Id.* Thus, the defendant "ha[d] not overcome the presumption of reasonableness." *Id.*

As to the first factor, or purposeful injection, the Complaint pleads that the

"[e]xercise of jurisdiction … comports with fair play and substantial justice" because Defendant "interjected itself into this forum by virtue of profiting from [Plaintiff]'s copyrighted works [and] offering them for free as a marketing and promotional tool to gain clients." ECF No. 1 at 10, ¶ 18. It also alleges that Defendant "solicited residents of this District by offering its services to victims of California wildfires." *Id.* The Court agrees the first factor weighs against Defendant because it aimed its conduct at residents of the Southern District and injected itself into this District.

As to the second factor, or burden on the defendant, Plaintiff alleges that because Defendant offers its services to people throughout California, including residents of this District, any travel to San Diego that would be required to defend this action would not be onerous to Defendant. *Id.* at 10, ¶ 19. In his Opposition, Plaintiff also argues that the burden on a party to litigate in different districts within California is minimal, and that alone is insufficient to justify transfer, even where the degree of activity within the forum district is minimal. ECF No. 7 at 18:11-14 (citing *Brayton*, 361 F. Supp. 2d at 1143). With regard to witnesses likely to be deposed, the location of such witnesses does not have much bearing on convenience as the witnesses will likely be deposed wherever the witnesses reside. *Id.* at 18:14-17 (citing *Brayton*, 361 F.Supp.2d at 1143). Further, the place and course of discovery will not be affected by venue. *Id.* at 18:17-18. Finally, Plaintiff points out that participation of the parties themselves will be limited to rare appearances at events like mediation and trial, or perhaps significant hearings, if any, which again, will be minimal. *Id.* at 18:18-20. The main burden would be on counsel, who may have to occasionally travel for hearings or depositions; however, courts have recognized that travel within California is "not especially inconvenient." *Id.* at 18:20-19:2.

As to the third and fourth factors, Plaintiff argues that the Southern District has a compelling interest in adjudicating and protecting the intellectual property and goodwill of companies situated in this District. *Id.* at 19:10-12. As to the fifth factor, Defendant points to no reason why litigating in the Eastern District would be the most efficient means of judicial resolution for this case. *Id.* at 19:6-8. As to the sixth factor, Defendant also fails

-28-

to explain why Plaintiff's interest in obtaining convenient and effective relief in the Southern District, his chosen forum, should be disregarded. *Id.* at 19:8-10. Finally, as to the seventh factor, Plaintiff argues that although Defendant identifies the Eastern District as an alternative forum, it does not identify any particular interest the Eastern District may have over the Southern District in adjudicating this dispute. *Id.* at 19:5-6.

Located approximately 500 miles away from the Southern District, the Eastern District is several hours away by car. While this burden slightly favors the defendant, like the defendant in *CollegeSource*, Defendant has not shown the Southern District's exercise of jurisdiction would be unreasonable, especially given the prevalence of videoconferences and electronic appearances. 653 F.3d at 1080. As the *Brayton* court noted, Defendant can always retain local counsel as well. 362 F. Supp. 2d at 1143. Further, also as in *Brayton*, witnesses will likely be found in both the Southern and Eastern Districts. 362 F. Supp. 2d at 1143. Thus, despite several factors weighing slightly in Defendant's favor, this Court finds that, like the courts in *CollegeSource* and *Brayton*, on balance, the factors do not show that the assertion of specific jurisdiction over Defendant is unreasonable. 653 F.3d at 1080; 362 F. Supp. 2d at 1143. If the assertion of personal jurisdiction is reasonable, then, venue is proper in the Southern District.

## V.   **CONCLUSION**

For the above reasons, Defendant's Motion to Dismiss the Complaint and/or Transfer Venue Pursuant to Federal Rule of Civil Procedure 12(b)(3) and 28 U.S.C. § 1406 is **DENIED**.

**IT IS SO ORDERED.**

DATED:   November 24, 2021

_____
**HON. ROGER T. BENITEZ**
United States District Judge